S09G0881. TAYLOR v. THE STATE.

(687 SE2d 409)

MELTON, Justice.

After being involved in a motor vehicle collision that resulted in the death of James Oliver, Danielle Taylor was indicted for, among other things, involuntary manslaughter, first degree homicide by vehicle, and serious injury by vehicle.[1] A jury acquitted Taylor on the homicide by vehicle count, acquitted her on a charge of following too closely, and found her guilty on all remaining counts. Despite the jury's acquittal of Taylor on the homicide by vehicle charge, however, the trial court then decided after the verdict to treat the involuntary manslaughter charge against Taylor as a second count of first degree vehicular homicide, and thereafter sentenced Taylor to fifteen years for first degree homicide by vehicle. The Court of Appeals reversed the trial court's entry of a conviction for first degree homicide by vehicle and remanded the case to the trial court for re-sentencing on the charge of serious injury by vehicle. This Court granted Taylor's petition for a writ of certiorari to determine whether the Court of Appeals erred in directing the trial court to re-sentence Taylor for the offense of serious injury by vehicle where the trial jury acquitted Taylor of homicide by vehicle, but also found her guilty of involuntary manslaughter based on the same set of facts involving a single victim. As explained more fully below, because the record reveals that the involuntary manslaughter count of the indictment was not merely a second count of first degree homicide by vehicle, we agree with the Court of Appeals that the trial court improperly treated the jury's finding of guilt on the involuntary manslaughter count as a finding of guilt on an additional homicide by vehicle count. We therefore affirm.

Here, the trial court inappropriately engaged in after-the-fact speculation in an effort to make sense of the jury verdict. Again, the jury acquitted Taylor of vehicular homicide, but found Taylor guilty of involuntary manslaughter. The difficulty arose from the fact that the conviction for involuntary manslaughter was for an offense that should never have been charged. The proper charge, under these

---

[1] A more detailed account of the facts surrounding the collision and the charges brought against Taylor can be found in the Court of Appeals opinion relating to this case, *Taylor v. State*, 295 Ga. App. 689 (673 SE2d 7) (2009).

circumstances, would have been for vehicular homicide only, the charge for which Taylor was acquitted. See *State v. Foster*, 141 Ga. App. 258, 260 (1) (233 SE2d 215) (1977), aff'd, 239 Ga. 302 (236 SE2d 644) (1977) ("As a result of the enactment . . . of the vehicular homicide statute . . . vehicular homicides which formerly were prosecuted as for involuntary manslaughter must now be prosecuted under the new statute.").

The State would attempt to justify the trial court's ruling by concluding that the trial court was allowed to treat the indicted involuntary manslaughter charge as a de facto charge of homicide by vehicle resulting from reckless driving — even after the jury had expressly acquitted Taylor of vehicular homicide. However, there are several problems with this conclusion: (1) it is clear that all charges were indicted, tried, and charged as distinct and separate offenses; (2) by re-casting the impermissible involuntary manslaughter charge as an ostensibly proper vehicular homicide charge, the trial court allowed and gave life to an inappropriate prosecution for both involuntary manslaughter and vehicular homicide; and (3) by re-casting the involuntary manslaughter charge as a second charge for vehicular homicide *after the verdict*, the trial court usurped the role of the jury.

The seven-count indictment here specifically charged the defendant with seven separate crimes. Indeed, in its charge to the jury, the trial court explicitly instructed the jury that the "defendant is charged with a crime against the laws of this state and in this Indictment actually *seven individual crimes*."[2] One of these individual crimes was involuntary manslaughter, which the trial court emphasized was not a second count of homicide by vehicle, but rather a completely independent charge. In its charge, the trial court stated that "with regard to [the involuntary manslaughter count] of the indictment, I charge you that a person commits involuntary manslaughter when the person causes the death of another human being without any intention to do so by the commission of the offense of reckless driving." Notably, the court did not use this same language when defining the offense of homicide by vehicle for the jury. In fact, with respect to homicide by vehicle, the court instructed the jury on additional elements that it had to consider in order to find Taylor guilty of that individual crime. Specifically, the trial court charged the jury that "[a] person commits the offense of homicide by vehicle when without malice [a]forethought that person causes the death of another person by *driving a motor vehicle in reckless*

---

[2] The trial court reiterated the separate nature of the offenses by re-charging the jury in this exact language in response to one of the jury's questions.

*disregard for the safety of persons and property at an unsafely high speed while failing to maintain her lane.*" Contrary to any indication that the State intended for the involuntary manslaughter count to merely be a second count of homicide by vehicle, the record reveals that the State intended for the jury to treat the involuntary manslaughter count of the indictment as an entirely separate crime from homicide by vehicle by allowing the jury to be instructed that it was in fact a separate crime with different elements. Thus, it cannot be said, as the dissent claims, that the jury "[o]bviously [entered] two homicide [by vehicle] verdicts," because the jury was specifically instructed to treat involuntary manslaughter as an entirely separate offense from homicide by vehicle.

In this regard, as the State correctly conceded, and as the Court of Appeals correctly concluded, the State could not maintain a prosecution under both the involuntary manslaughter statute and the homicide by vehicle statute for a death that resulted from reckless driving. See *Foster*, supra, 141 Ga. App. at 260 (1). By allowing the jury to treat involuntary manslaughter as an entirely separate offense in the same trial in which the defendant was tried for vehicular homicide, however, the trial court permitted the State to do exactly what it was prohibited from doing — prosecute a defendant under both the vehicular homicide and involuntary manslaughter statutes for a death that resulted from reckless driving.

The trial court compounded its error by then usurping the jury's role and attempting to re-cast the jury's finding of guilt on involuntary manslaughter as a finding of guilt on vehicular homicide — the very crime that the jury had acquitted the defendant of committing and that the trial court's own instructions indicated was a "separate" crime from involuntary manslaughter.[3] The Court of Appeals properly held that this was impermissible. See *Foster*, supra. Because the "homicide by vehicle" conviction based on a finding of guilt on "involuntary manslaughter" was impermissible, the Court of Appeals properly vacated that conviction, which left open only the question whether a serious injury by vehicle conviction could still remain in light of the evidence presented at trial. Because we agree with the Court of Appeals that the evidence supported the jury's verdict on the serious injury by vehicle count (see *Miller v. State*, 275 Ga. 730 (1) (571 SE2d 788) (2002) (aggravated battery conviction upheld where victim did not die instantaneously)), we further agree

---

[3] In this connection, contrary to the dissent's assertions, this case has nothing to do with any exception to the abolition of the inconsistent verdict rule. Indeed, this Court need not speculate about the intentions of the jury in rendering its verdict in order to determine whether it was appropriate for the trial court to enter a conviction on an offense for which Taylor was specifically acquitted.

with the Court of Appeals that the case must be remanded to the trial court for resentencing on that count.

*Judgment affirmed. All the Justices concur, except Carley, P. J., and Nahmias, J., who dissent.*

CARLEY, Presiding Justice, dissenting.

In its zeal to insist that Appellant Danielle Taylor was fully acquitted of homicide by vehicle in the first degree as defined in OCGA § 40-6-393, the majority erroneously disregards the firm basis in Georgia law for the trial court's treatment of the count denominated "involuntary manslaughter" as a duplicate "vehicular homicide" charge, as well as fundamental principles regarding the construction of verdicts which even the Court of Appeals accepted in this case.

The majority initially determines that involuntary manslaughter "should never have been charged." (Maj. op. p. 328) In the Court of Appeals, "the State concede[d] that it was not authorized to prosecute [Appellant] under the involuntary manslaughter statute for a death resulting from reckless driving." *Taylor v. State*, 295 Ga. App. 689, 692 (3) (673 SE2d 7) (2009). I am not certain that this concession was accurate. See *State v. Foster*, 141 Ga. App. 258, 260 (1) (233 SE2d 215) (1977) (cited by the majority), aff'd, *Foster v. State*, 239 Ga. 302 (236 SE2d 644) (1977). But see *State v. Tiraboschi*, 269 Ga. 812, 813 (504 SE2d 689) (1998) ("That a charge of vehicular homicide may also lie does not mean that the State is precluded from indicting" the defendant for felony murder.). However, my analysis will be consistent with that concession. *State of Ga. v. Crane*, 224 Ga. 643 (2) (164 SE2d 116) (1968).

The majority criticizes treatment of the "involuntary manslaughter" count as a "de facto" charge of vehicular homicide. However, "[i]t is the description in the indictment that characterizes the offense charged, not the name given to the offense in the bill of indictment. [Cit.]" *State v. Barnett*, 268 Ga. App. 900 (1) (602 SE2d 899) (2004). See also *State v. Edwards*, 236 Ga. 104, 107 (222 SE2d 385) (1976); *Rank v. State*, 179 Ga. App. 28 (1) (345 SE2d 75) (1986). Thus, the majority errs in relying upon mere nomenclature and upon its assumption of an unarticulated intent by the State that the jury be governed by the denomination of the offenses rather than the elements set forth in the indictment. To the contrary, the courts have never assumed such an intent, and instead have consistently disregarded the very nomenclature present in this case, holding "that an indictment for 'involuntary manslaughter' alleging facts which bring the case under [OCGA] § 40-6-393 is valid, [even if it] can support only a § 40-6-393 conviction . . . ." Robert E. Cleary, Jr., *Kurtz Criminal Offenses and Defenses in Ga.*, "Motor Vehicle Crimes" (II)

(D) (4), p. 978 (2008 ed.). See also *State v. Edwards*, supra; *Wilson v. State*, 147 Ga. App. 560, 561 (2) (249 SE2d 361) (1978), disapproved on other grounds, *Epps v. State*, 169 Ga. App. 157, 158 (1) (312 SE2d 146) (1983); *Berrian v. State*, 139 Ga. App. 571, 573 (2) (228 SE2d 737) (1976). In this case, the count of the indictment which was denominated "involuntary manslaughter" alleged that Appellant unintentionally caused the victim's death "while in the commission of the unlawful act of Reckless Driving . . . ." That count describes an act which comes within OCGA § 40-6-393 (a), under which vehicular homicide in the first degree is committed by "[a]ny person who, without malice aforethought, causes the death of another person through the violation of . . . Code Section 40-6-390[,]" which proscribes the misdemeanor offense of reckless driving. Therefore, the trial court correctly found that the "involuntary manslaughter" count actually charged Appellant with first degree vehicular homicide.

Moreover, the trial court's instruction on the "involuntary manslaughter" count was entirely consistent with the indictment and, contrary to the majority's assertion, included the same elements as the instruction on the count denominated "homicide by vehicle in the first degree." The mere fact that the latter instruction described the underlying offense of reckless driving in greater factual detail does not make it a different offense from the reckless driving specified as the underlying offense in the "involuntary manslaughter" count. Thus, the majority is incorrect in opining that, "with respect to homicide by vehicle, the court instructed the jury on additional elements," (maj. op. p. 329) and in thereby failing to recognize the fundamental legal distinction between the essential elements of a crime and the factual details thereof. See *Hester v. State*, 283 Ga. 367, 368 (2) (659 SE2d 600) (2008).

Accordingly, the State correctly argued that "the indictment charged [Appellant] with *two* counts of homicide by vehicle in the first degree based upon the same act of reckless driving and involving the same victim." (Emphasis in original.) *Taylor v. State*, supra. Such construction of an indictment as including duplicate counts is occasionally necessary and is more reasonable than the majority's insistence that one of two substantially identical counts actually charges a different crime which the State is not authorized to prosecute. The mere fact that two counts of an indictment are indistinguishable does not prevent the imposition of a sentence on one of those two counts. See *Taylor v. State*, 292 Ga. App. 846, 848-849 (2) (666 SE2d 85) (2008), overruled on other grounds, *Adams v. State*, 299 Ga. App. 39, 41-42 (1) (681 SE2d 725) (2009); *Payne v. State*, 207 Ga. App. 312, 316 (5) (428 SE2d 103) (1993), overruled on other grounds, *Sims v. State*, 266 Ga. 417, 418 (2) (467

SE2d 574) (1996); *Hilliard v. State*, 193 Ga. App. 54 (1) (387 SE2d 21) (1989).

In citing *Turner v. State*, 283 Ga. 17, 20-21 (2) (655 SE2d 589) (2008), the Court of Appeals correctly recognized that the jury's guilty and not guilty verdicts on the duplicate homicide counts raises the applicability vel non of the exception to this Court's abolition of the inconsistent verdict rule. *Taylor v. State*, 295 Ga. App., supra at 693 (3). Obviously, the jury's two homicide verdicts are not mutually exclusive, because one of them was a not guilty verdict. *Turner v. State*, supra at 20 (2). Although the inconsistent verdict rule involves verdicts of guilty and not guilty, that rule was abolished because

> appellate courts "cannot know and should not speculate why a jury acquitted on . . . (one) offense and convicted on . . . (another) offense. The reason could be an error by the jury in its consideration or it could be mistake, compromise, or lenity. . . ." Stated another way, it is "imprudent and unworkable . . . (to) allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that the courts generally will not undertake." [Cits.]

*Turner v. State*, supra. The sole exception to abolition of the inconsistent verdict rule applies "when instead of being left to speculate about the unknown motivations of the jury the appellate record makes transparent the jury's reasoning why it found the defendant not guilty of one of the charges . . . ." *Turner v. State*, supra at 20-21 (2) (where the jury made an express finding of justification as to one count but inconsistently found the defendant guilty of other charges based on the same conduct).

That exception is wholly inapplicable here, as neither the verdict itself nor the trial court's instructions nor anything else in the record makes transparent any reasoning by the jury for finding Appellant not guilty of one of the homicide charges, which reasoning is inconsistent with its finding of guilt on the other homicide charge. Thus, we should not engage in speculation or unauthorized inquiry into jury deliberations by assuming that the jury treated the "involuntary manslaughter" count as an entirely separate offense and that its findings are necessarily inconsistent. In the absence of any showing from the record of the jury's reasoning, it is certainly not "transparent" that the jury treated the "involuntary manslaughter"

count as an entirely separate offense when that count charged the same elements as vehicular homicide in the first degree. Furthermore, as far as the record reveals, the jury may have made a mistake due to the confusing nature of the indictment, reached a compromise verdict, or simply been lenient, properly determining that Appellant should be convicted for only one homicide since there was but one victim. See *Diamond v. State*, 267 Ga. 249, 251 (3) (b) (477 SE2d 562) (1996) (defendant not convicted and sentenced for vehicular homicide because she could "be convicted only once for the death of each victim"); *Taylor v. State*, 292 Ga. App., supra; *Payne v. State*, supra; *Hilliard v. State*, supra. Moreover, the record does not show that any mistake, compromise, lenity, or other reason for the jury's inconsistent verdict worked against Appellant instead of causing the jury not to find her guilty of both homicide counts. The anomalous effect of the Court of Appeals' holding is to reverse a guilty verdict on the ground that the jury returned a not guilty verdict on another charge when Appellant could not be convicted of both charges anyway, and when nothing in the record shows any transparent jury reasoning requiring a rare application of the inconsistent verdict rule.

Accordingly, the Court of Appeals' judgment should be reversed to the extent that it reverses Appellant's conviction and sentence for homicide by vehicle in the first degree. I do agree that the Court of Appeals clearly was correct that there was sufficient evidence of serious injury by vehicle because, although the evidence before the trial court "did not conclusively show whether the victim died immediately upon impact or whether he survived the initial impact but died shortly thereafter after hemorrhaging internally, the resolution of this issue was for the jury. [Cit.]" *Taylor v. State*, 295 Ga. App., supra at 693-694 (4). In other words, "there was evidence at trial from which the jury could have concluded that [the victim] did not die instantaneously." *Miller v. State*, 275 Ga. 730, 732 (1) (571 SE2d 788) (2002) (where the crime at issue was aggravated battery, as defined in OCGA § 16-5-24, all elements of which, except for malice, are also found in the serious injury by vehicle statute, OCGA § 40-6-394). However, serious injury by vehicle, as proscribed in OCGA § 40-6-394, is a lesser included offense of first degree vehicular homicide, as defined in OCGA § 40-6-393 (a), because the former offense differs from the latter "only in the respect that a less serious injury . . . to the same person . . . suffices to establish its commission." OCGA § 16-1-6 (2). See also *Hill v. State*, 259 Ga. App. 363, 365 (1) (577 SE2d 61) (2003). Thus, because Appellant was properly convicted of vehicular homicide, she should not be convicted of serious injury by vehicle of the same victim. OCGA § 16-1-7 (a) (1). Therefore, the Court of Appeals' judgment also ought to be reversed to the extent that it directs the trial court to resentence Appellant for serious injury by

vehicle. Because I cannot join the majority's unauthorized elevation of the indictment's nomenclature over its substance and the majority's disregard of this Court's prior abolition of the inconsistent verdict rule, I respectfully dissent to the affirmance of the Court of Appeals' judgment in this case. The judgment of the trial court was correct.

I am authorized to state that Justice Nahmias joins in this dissent.

DECIDED NOVEMBER 2, 2009 —
RECONSIDERATION DENIED DECEMBER 15, 2009.

*Brenda J. Bernstein*, for appellant.
*Tracy G. Lawson, District Attorney, Billy J. Dixon, Assistant District Attorney*, for appellee.